IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEBRAHTU TSEHAI, ) | |
| ) | |
| Petitioner, ) | No. C 04-3537 CRB (PR) |
| ) | |
| vs. ) | ORDER DENYING PETITION |
| ) | FOR A WRIT OF HABEAS |
| TERESA A. SCHWARTZ, Warden, ) | CORPUS |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Alameda of possessing a concealed firearm and possessing cocaine base, a lesser offense than the charged possession of cocaine base for sale. On October 25, 2002, the court sentenced petitioner to two years and eight months in state prison. Petitioner appealed, but the California Court of Appeal affirmed the judgment of conviction and the Supreme Court of California denied review.

Petitioner then filed the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per order filed on January 18, 2005, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause. Petitioner did not file a traverse.

## FACTUAL BACKGROUND

At 8:20 a.m. on April 23, 2002, Oakland police officer Jason Sena was conducting undercover surveillance of suspected narcotics sales in the 1800 block of 96th Avenue. Officer Sena observed petitioner walking northbound on 96th Avenue from East 14th Street to Birch Avenue. Petitioner stopped near 1815 96th Avenue and had a brief conversation with Robert Wilson, who Sena knew from previous contacts. Sena had arrested Wilson's brother twice for selling drugs at that location, and Wilson himself had been present at those arrests and on other occasions when Sena had contact with Wilson's brother. Sena had been told by residents in the neighborhood that Wilson was also a drug dealer. Rep. Tr. at 77-78, 83-84, 106-07. Sena, a seven-year veteran with specialized narcotics training who had conducted hundreds of narcotics arrests and investigations, including over 20 undercover surveillance operations, "had received numerous complaints from citizens who live in the area stating [it was] plagued for years by narcotic dealers in the area." Id. at 78. Sena was familiar with the location, and knew it to be a "high narcotics area." Id.

On the morning in question, as petitioner spoke to Wilson, he handed Wilson something that Sena could not see. Wilson then immediately ran into the yard of the residence at 1815 96th Avenue. Id. at 85. About four minutes later, Wilson returned to petitioner, who had been sitting on a milk crate, talking occasionally to a couple of nearby people, as he waited for Wilson. Before Wilson returned, petitioner did not give anything to, or receive anything from, anyone else; nor did he pick up or discard anything. Id. at 86-87. As Wilson came up to petitioner, he handed something to petitioner that Sena could not see. Petitioner held it for a second, then began walking south and crossed the street between two cars. Sena did not see where petitioner put the object Wilson had

2

given him, but petitioner did not make any throwing motions.  After crossing to the sidewalk on the east side of the street, petitioner walked south on 96th Avenue to East 14th Street.  He did not talk to anyone, discard anything, or pick up anything as he walked.  Id. at 87-88.

When petitioner reached East 14th Street, he turned east and continued walking on the north sidewalk, whereupon Sena lost sight of him.  Id. at 89.  Suspecting that petitioner had just purchased narcotics, Sena transmitted a request to his arrest team that petitioner be stopped, providing a description of petitioner and the direction in which he was walking.  Id. at 89-91.  As soon as Sena transmitted the request, he received a response from officer Ryan Gill, who said, "Okay.  I see him."  Id. at 114.  When Gill saw petitioner turn left onto East 14th Street (also referred to by its other name, International Boulevard), Gill parked his police car about half a block ahead of petitioner, who was now walking towards Gill.  Id. at 174-76.  Gill got out of his car, walked towards petitioner, and asked him where he was headed.  Petitioner looked at Gill, stopped and looked around momentarily, and then resumed walking.  He looked nervous, and said he was headed home.  Gill asked where that was, and petitioner said "right up the street."  When Gill asked for the address, petitioner gave him an address on Saint Charles Street, which Gill recognized as being about four or five miles away in Alameda.  Gill then walked up to petitioner and handcuffed him.  Id. at 179-81.

Gill asked petitioner if he was carrying a gun or knives or anything sharp, and petitioner said no.  Holding petitioner by the handcuffs, Gill then searched him, beginning with his right side.  A back-up police officer, Donald Sawyer, arrived to assist.  In petitioner's right front pants pocket, Gill pulled out $13 in cash, and a plastic bag containing a large rock of crack cocaine that was subsequently found to weigh 12.24 grams.  Gill put the drugs and the cash on the right front seat of the

police car, and continued the search of petitioner's person. Id. at 148, 181-85, 198, 325-27.  Gill then searched petitioner's left side, and recovered an unloaded, western-style, revolver concealed in petitioner's left front pants pocket.  Gill put the gun in the patrol car next to the drugs and the cash. Id. at 184-85, 327.  Gill placed petitioner under arrest and, a few hours later, transported petitioner to jail and turned in the evidence.  Gill identified the evidence in court. Id. at 186-87, 190-93.  The revolver was tested and found to be operable. Id. at 222-26.

After Sena reported the suspected drug transaction between petitioner and Wilson, he continued to conduct surveillance at the same location.  About two hours after signaling for his arrest team to detain petitioner, Sena saw Wilson engage in a hand-to-hand transaction with the driver of a blue truck that had just driven up and parked.  At Sena's request, after the truck drove away, both Wilson and the driver were stopped. Id. at 91-92, 129-31.  Wilson had over $600 on him when he was searched. Id. at 109.

In August 2001, prosecutor Catherine Kobal prosecuted petitioner for two firearm offenses.  Petitioner pleaded no contest to the misdemeanor offense of carrying a loaded firearm in exchange for the dismissal of the second charge of carrying a concealed firearm. Id. at 159-64.  As a result of that conviction, petitioner was prohibited from owning, using or possessing firearms. Id. at 166.

Petitioner testified in his own defense. Id. at 269.  He denied being at Robert Wilson's location that morning, or buying drugs, or having drugs on his person, or having been arrested for drugs before. Id. at 272-73.  Petitioner denied ever possessing, buying or using crack cocaine before. Id. at 289.  He denied telling Gill that he lived nearby; instead, he claimed he told Gill he was to his girlfriend's house in West Oakland. Id. at 273.  Petitioner claimed that he took the gun from his girlfriend's younger brother in order to get rid of it. Id. at 274-75,

281.  Although petitioner acknowledged he had the gun in his pocket, he denied carrying any crack cocaine.  He saw Gill holding a bag of what looked like crack cocaine, but did not see where Gill got it from, and denied that the drugs in evidence were what Gill was holding during petitioner's search.  Id. at 277-80, 290-93, 301-02.

## DISCUSSION

A. <u>Standard of Review</u>

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.  Claims

Petitioner seeks federal habeas corpus relief under § 2254 by claiming that the trial court erred by: (1) refusing to order a competency hearing during trial and (3) admitting testimony regarding his prior conviction.

1.  Request for a competency hearing

Petitioner claims that the trial court's refusal to hold a competency hearing violated his due process rights because there was substantial evidence that he was incompetent to stand trial.

As petitioner took the stand to testify (against his counsel's advice), and just before the jury entered the courtroom, the following exchange occurred:

> [Defense counsel]: In these situations we bring the defendant up here and the deputy sits next to him, that's necessary?

> THE COURT: It is necessary, from what I understand, is his designation, as far as the Sheriff's Department is "as far as the in custody."
>
> [Defense counsel]: Before the jury comes, he's got a special designation. I've never been informed why that is.
>
> THE COURT: Okay. You know what, hold up a second. Off the record.
>
> (Discussion off the record.)
>
> THE COURT: For the record, Mr. Tsehai is on the witness stand and Deputy Davila is sitting next to him.
>
> [Defense counsel]: Before we start, I have something – the reason my client is segregated is because he's been evaluated by the Sheriff's Department and has mental problems. And I know I've been having difficulty dealing with him throughout this case, but was not aware of that. There has been an evaluation, and he does have mental problems. And before we proceed any further with the case, I would like to see that mental evaluation or have the Court order an evaluation to see if he's competent to testify and go through the rest of the trial.

Rep. Tr. at 266-67.

There followed discussion indicating that neither the court nor counsel was aware that any mental evaluation had been performed. Defense counsel noted "the sheriff may have done that on their own," and petitioner interjected, "They did. They put me somewhere." Id. at 267. The court stated that whatever petitioner's competency issues were with the sheriff, his competency for trial was not in question. Declaring California Penal Code section "1368 issues are looked into well before the trial," the court said to defense counsel: "This is the first that you've raised the issue. At this point, I'm not inclined to simply stop the trial for these issues. I don't have anything in front of me that would indicate that he's not competent and able to testify." Id. at 268.

Petitioner claims the trial court erred in failing to order a competency hearing because there was evidence that he was incompetent to stand trial. Petitioner contends that clear indication of his incompetence arose during an in

7

limine hearing on the defense motion to exclude evidence of his prior conviction for carrying a loaded firearm. According to petitioner, defense counsel complained that petitioner would not tell him whether he would stipulate to the prior conviction and the court's intervention failed to secure an unequivocal answer from him as well. Petitioner argues that his refusal, or inability, to decide whether or not to stipulate to the prior conviction demonstrates an inability to assist in his defense.

The California Court of Appeal rejected petitioner's claim. People v. Tsehai, No. A100584, 2004 Cal. App. Unpub. LEXIS 1795, at **12-14 (Cal. Ct. App. Feb. 17, 2004). The court explained:

> . . . "A defendant is incompetent to stand trial when he suffers a mental disorder or developmental disability rendering him 'unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' [Citations] As a matter of due process, the trial court is required to conduct a section 1368 hearing to determine a defendant's competency whenever substantial evidence of incompetence has been introduced. [Citations.] Substantial evidence is evidence that raises a reasonable doubt about the defendant's competence to stand trial. [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 951-952.)
>
> Here, defense counsel did not challenge Tsehai's competence to stand trial based on anything in particular that counsel had observed, although he noted he had had difficulties dealing with his client. He based his request for a mental evaluation on the fact that Tsehai had 'been evaluated by the Sheriff's Department and has mental problems.' This, however, was plainly insufficient to show that Tsehai was unable to understand the nature fo the proceedings or rationally assist in his defense. Counsel did not raise Tsehai's apparent failure to grasp the significance of the pretrial decision on the proposed stipulation as additional evidence of incompetence. But even if he had, the evidence before the court would still not have been so substantial an indication of mental disorder or developmental disability as to require the initiation of a section 1368 proceeding.
> "When the evidence casting doubt on an accused's present competence is less than substantial, the following rules govern the application of section 1368. It is within the discretion of the trial judge whether to order a competence hearing. When the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise doubt than mere bizarre actions [citation] or statements of defense counsel that defendant is incapable of

> cooperating in his defense [citation] . . . ." (*People v. Welch* (1999) 20 Cal.4th 701, 742.)
>
> Tsehai presents us with no more than the kind of circumstances the *Welch* court deemed insufficient. Nor does he contend he was improperly denied access to whatever mental evaluation may have been conducted by the Sheriff's Department. We note that counsel did not renew his claim of incompetence following Tsehai's testimony, which began with statements that his mental state was 'fine,' that he understood the charges he was facing, and that he recognized counsel had advised him not to testify but wanted to 'tell my side of the story.'

Id. (omissions in original).

The California Court of Appeal's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). Nor did it involve an unreasonable determination of the facts. Id.

It is well-established that due process requires that a criminal defendant not be tried unless he is competent to stand trial. Godinez v. Moran, 509 U.S. 389, 396 (1993). A defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. Id.

It is also well-established that due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence. Pate v. Robinson, 383 U.S. 375, 385 (1966); see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000) (finding that this standard is "clearly established Federal law, as determined by the Supreme Court" within the meaning of 28 U.S.C. § 2254(d)(1)). A good faith doubt about a defendant's competence arises only if there is substantial evidence of incompetence. See Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994); Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir. 1991).

9

When considering a claim that a state trial court should have held a competency hearing, a federal habeas court considers only the information that was before the state trial court. See Amaya-Ruiz v. Stewart, 121 F. 3d 486, 489 (9th Cir. 1997). In addition, the state trial court's finding that a competency hearing was not required is entitled to a presumption of correctness. See Maggio v. Fulford, 462 U.S. 111, 117 (1983); Evans v. Raines, 800 F.2d 884, 887 (9th Cir. 1986); accord 28 U.S.C. § 2254(e)(1).

Here, the state trial court's determination that a competency hearing was not required was objectively reasonable because the record shows that there was no substantial evidence of incompetence before the state trial court. Petitioner's refusal to stipulate that he had been previously convicted of misdemeanor firearm possession was not sufficient to raise a good faith doubt about his competence. Asked by the court if he understood the nature of the proposed stipulation, petitioner replied: "Yeah, I understand. But at the same time, if they don't bring it up, they ain't going to bring it up. It didn't matter, if convicted or not." When then asked, both by counsel and by the court, whether he wanted to admit the prior, petitioner stated: "Doesn't matter." Petitioner's ambivalence about entering a stipulation did not constitute substantial evidence of incompetence. Nor did his insistence on testifying on his own defense. Cf. Davis v. Woodford, 384 F.3d 628, 645-46 (9th Cir. 2004) (defendant's decision to wear jail clothing and to refuse to sit at counsel table during most of penalty phase of capital trial not substantial evidence of incompetence, where defendant acknowledged risks of his behavior and rationally weighed those risks against likelihood he would prejudice himself by having an outburst if he sat at the table). The trial court's determination that a competency hearing was not required is in fact supported by petitioner's testimony at trial, which makes clear that he understood the nature of the proceedings and was

10

aware of the factual basis for the charges against him.

Petitioner is not entitled to federal habeas relief on this claim. This was not a case where there was a lengthy history of acute psychosis and psychiatric treatment, see, e.g., Moore v. United States, 464 F.2d 663, 665 (9th Cir. 1972) (defendant repeatedly hospitalized for acute mental illness and hallucinations), or extremely erratic and irrational behavior during the course of the trial, see, e.g., Tillery v. Eyman, 492 F.2d 1056, 1057-58 (9th Cir. 1974) (defendant screamed throughout nights, laughed at jury, made gestures at bailiff, disrobed in courtroom and butted his head through glass window). The state trial court here was presented with no substantial evidence of incompetence. The California Court of Appeal's conclusion to that effect is supported by the record and is not an objectively unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

    2.    Testimony on the prior conviction

Petitioner claims that the admission of his prior misdemeanor firearm conviction violated due process because: (a) it was error under People v. Guerrero, 44 Cal. 3d 343, 355 (1988), to allow the prosecutor to prove the prior conviction through the live testimony of the prosecutor who negotiated petitioner's plea to that conviction; and (b) the prior was improperly admitted to prove that he knew he possessed the revolver seized by officer Gill.

The California Court of Appeal rejected petitioner's claim. It found that the Guerrero rule was not violated and that, although the trial court erred by admitting the prior conviction for the purpose of proving petitioner knew he possessed the revolver, the error was harmless. People v. Tsehai, 2004 Cal. App. Unpub. LEXIS 1795, at **15-17. The court explained:

> Tsehai admitted in his testimony that he knew he possessed the revolver. The fact of his prior conviction was undisputed, and was properly before the jury. The evidence of his guilt on the weapons charge was conclusive. The improperly admitted evidence did not

11

> appear to prejudice the jury against Tsehai on the drug charge, as it rejected the more serious allegation of possession for sale.

Id. at *17.

The California Court of Appeal's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d). This court is bound by the California Court of Appeal's determination that the Guerrero rule was not violated. See Bradshaw v. Richey, No. 05-101, slip op. at 3 (U.S. Nov. 28, 2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law). And the state court's further determination that the error in admitting the prior was harmless was not objectively unreasonable. It simply cannot be said, in view of the record, that the error substantially influenced the jury's decision. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). Petitioner is not entitled to federal habeas relief on this claim.

/
/
/
/

12

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: December 08, 2005

CHARLES R. BREYER
United States District Judge

13